1

2          **IN THE UNITED STATES DISTRICT COURT**

3          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

4

5   HAROLD WALKER,                          CASE NO. CV-F-09-01667- LJO-SKO

6                  Plaintiff,               **SUMMARY JUDGMENT DECISION**
           vs.                              (Doc. 62.)
7
    CITY OF FRESNO, et al,
8
                   Defendants.
9   _____/

10                        **INTRODUCTION**

11         Plaintiff Harold Walker ("Mr. Walker"), proceeding in propria persona, asserts that defendants

12  violated the Fourth Amendment and 42 U.S.C. § 1983 ("section1983") by: (1) committing an unlawful

13  entry, (2) making an unlawful arrest, and (3) using excessive force.  Defendants Joe Alvarez ("Sergeant

14  Alvarez"), Christopher Aranas ("Officer Aranas"), Phillip Corona ("Officer Corona"), Lindsay Dozier

15  ("Officer Dozier"), and Leslie Leibee ("Officer Leibee") (collectively "defendants"), employees of the

16  Fresno Police Department, seek summary judgment on plaintiff's Fourth Amendment and section 1983

17  claims.  Defendants contend that they did not violate Mr. Walker's Fourth Amendment rights as a matter

18  of law.  The motion is unopposed.  This Court considered defendants' summary judgment motion on

19  the record and vacated the November 2, 2011 hearing, pursuant to Local Rule 230(c) and (g).  For the

20  reasons discussed below, this Court GRANTS defendants' motion for summary judgment.

21  \ \ \

22  \ \ \

23                        **BACKGROUND[1]**

24  _____

25         [1] The background facts are derived from defendants' exhibits submitted with this motion and cited in their Separate
    Statement of Undisputed Facts ("SSUF"), unless otherwise noted.  Defendants provided a copy of the SSUF to Mr. Walker
26  and informed him that he needed to respond by September 30, 2011.  Mr. Walker did not respond to defendants and did not
    file an opposition to defendants' motion with this Court.  Accordingly, this Court considers defendants' version of the facts
27  as undisputed for purposes of this motion.  *See Beard v. Banks*, 548 U.S. 521, 527 (2006) (holding that the failure to
    specifically challenge facts identified in moving party's statement deemed admission of those facts).  In resolving this motion,
28  this Court relied on evidence admissible under the Federal Rules of Evidence only.  *See* Fed. R. Civ. P. 56(c)(4).

                                      1

# PLAINTIFF'S ALLEGATIONS[2]

Mr. Walker alleges that on August 29, 2009, he and Michael Edwards ("Mr. Edwards") were on their way to a party when he felt sick. Mr. Edwards told Mr. Walker to go back to his apartment until he returned. Mr. Walker returned to the apartment and watched TV. While at the apartment, Sgt. Alvarez and Officers Aranas, Leibee, Dozier, and Corona entered the apartment without consent, a warrant, or exigent circumstances. Once inside the apartment, Mr. Walker told the Officers that he had a pre-existing neck and back injury.[3] Despite this information, the Officers grabbed Mr. Walker by the head and slammed him head first onto the ground. The Officers then jumped on Mr. Walker's back, which caused him neck and back pain. The Officers handcuffed Mr. Walker and dragged him out of the apartment. When Mr. Walker told the Officers that he needed medical attention they ignored him. While Mr. Walker was lying on the ground, Officer Aranas took his wallet and found his parole identification card. Mr. Walker was eventually transported to the hospital for treatment. While at the hospital, Mr. Walker's blood was drawn. The blood tested positive for cocaine.[4]

# DEFENDANTS' STATEMENT OF FACTS

## Dispatch to Apartment Complex

Shortly before midnight on August 29, 2009, Arthur Madrid ("Mr. Madrid"), the manager of the Executive Suite Apartments, noticed Mr. Walker waiting at the security gate of the complex. Mr. Walker waited until another resident entered the security code and then entered the complex. Mr. Walker wandered the apartment complex without an apparent destination and then walked toward Mr. Edwards' apartment. Mr. Madrid approached Mr. Walker and asked him where he was going. Mr. Walker explained that he was there to see Mr. Edwards and then walked into Mr. Edwards' apartment. Mr. Madrid was a friend of Mr. Edwards, knew that he lived alone, and knew that Mr. Edwards did not have any guests staying with him.

---

[2] Although Mr. Walker did not file a response to defendants' SSUF or an opposition to defendants' motion, this Court considered facts set forth in the exhibits attached to Mr. Walker's first amended complaint ("FAC") and his allegations.

[3] In May of 2009, Mr. Walker had cord decompression and fusion surgery, *i.e.*, neck and back surgery, to manage his degenerative disk disease. According to medical reports, Mr. Walker tolerated the surgery well. *See* Exhibit 4 attached to Mr. Walker's FAC.

[4] *See* Exhibit 2, p.3 attached to Mr. Walker's FAC.

2

1    Mr. Madrid knocked on the door to the apartment and requested to speak to Mr. Edwards. Mr.

2    Walker told Mr. Madrid that Mr. Edwards was busy. Mr. Madrid again requested to speak to Mr.

3    Edwards. Mr. Walker refused. Mr. Madrid told Mr. Walker that if he did not let him talk to Mr.

4    Edwards he would call the police. Mr. Walker responded, "I don't give a fuck what you do, call them."

5    After this interaction, Mr. Madrid went back to his apartment, called Mr. Edwards' home phone,

6    and asked to speak to him. Mr. Walker told Mr. Madrid that Mr. Edwards was busy and could not come

7    to the phone. Concerned for Mr. Edwards' safety, Mr. Madrid called the police. Mr. Madrid told the

8    police that a suspicious person walked into a tenant's apartment without knocking and that he was

9    concerned for the tenant's welfare.

10    Officers Aranas and Leibee ("Officers") were dispatched to the scene. Mr. Madrid told the

11    Officers that he first saw Mr. Walker waiting outside the front security gate. When Mr. Walker entered

12    the complex, Mr. Madrid asked him where he was going. Mr. Walker told Mr. Madrid that he was

13    visiting Mr. Edwards and then walked into Mr. Edwards' apartment. Mr. Madrid told the Officers that

14    he felt that Mr. Walker was acting strange and was not forthcoming about his presence in the complex.

15    Mr. Madrid further explained that he knew that Mr. Edwards did not have any visitors staying with him

16    and that, per the rental agreement, he was not permitted to have anyone stay in the apartment. In

17    addition, Mr. Madrid told the Officers that he knew Mr. Edwards well enough that he would have

18    communicated with him regarding anyone staying in the apartment.[5]

19    Mr. Madrid also told the Officers that he called Mr. Edwards' apartment and a male who sounded

20    like Mr. Walker, answered the phone. When Mr. Madrid asked to speak to Mr. Edwards' to confirm that

21    he was okay, Mr. Walker hesitated and then told Mr. Madrid that Mr. Edwards was busy. When Mr.

22    Madrid told Mr. Walker that he needed to speak with Mr. Edwards or he would call the police, Mr.

23    Walker replied, "I don't give a fuck." After explaining what happened, Mr. Madrid provided the

24    Officers with a key to the apartment.

25    The Officers went up to the apartment, knocked on the window and security door for a few

26

27        [5] Mr. Edwards often traveled out of town to visit his parents. Mr. Edwards and Mr. Madrid had an agreement that
     Mr. Edwards would always let Mr. Madrid know when he was out of town and Mr. Madrid would keep an eye on his
28    apartment. Mr. Madrid would also take care of Mr. Edwards' dog while he was away.

3

1   minutes, and announced that they were from the Fresno Police Department.  There was no response.

2   It was obvious to the Officers that their knocking was loud enough to be heard by someone inside the

3   apartment because someone from the downstairs apartment walked outside and looked up.

4   **Entry into the Apartment and Attempt to Contain Mr. Walker**

5       When Mr. Walker failed to answer the door, the Officers decided to enter the home in order to

6   confirm Mr. Edwards' safety.  The Officers used the key provided to them by Mr. Madrid to open the

7   door.  After opening the door, but prior to entering, the Officers "again announced that [they] were with

8   the Fresno Police Department and advised any and all subjects in the apartment to step out."  (Leibee

9   Decl., p. 3).  After a few seconds, Mr. Walker walked out from the living room.  The distance from Mr.

10  Walker to the front door was approximately fifteen feet.  The hallway was three feet wide and contained

11  a door to a bedroom on the right and a door to a bathroom on the left.

12      While standing at the door frame, Officer Aranas requested that Mr. Walker walk toward them

13  so they could figure out why he was in the apartment.  Mr. Walker refused and was confrontational.  He

14  told the Officers that he was staying in the apartment, *i.e.*, a guest.  Officer Aranas told Mr. Walker that

15  if he was staying in the apartment, he needed to talk to them outside of the apartment so that they could

16  confirm everything. (Aranas Decl., p. 4).  Mr. Walker refused and then walked back into the living room

17  and out of the Officers' sight.  During this exchange Officer Aranas had his weapon drawn and Officer

18  Leibee had her taser drawn.  (Aranas Decl., p. 4).  Because Mr. Walker was acting suspiciously, refused

19  to cooperate, and was confrontational, Officer Leibee called for back up.  (Leibee Decl., p. 4).  Sgt.

20  Alvarez responded and the trio continued to ask Mr. Walker to step out of the apartment so they could

21  figure out what was going on.  Mr. Walker again told the Officers that he was staying there.  Officer

22  Aranas told Mr. Walker that the Officers needed to confirm that he was supposed to be in the apartment.

23  (Aranas Decl., p. 4).  Officer Aranas told Mr. Walker that the Officers were not going into the apartment

24  to talk him.  (Aranas Decl., p. 4).

25      When Officer Aranas told Mr. Walker that they were not leaving and not coming inside, Mr.

26  Walker began to walk toward them.  When Mr. Walker was at the doorway of the bathroom, which was

27  4-5 feet from the Officers, Officer Aranas told Mr. Walker to turn around and get on his knees so that

28  they could handcuff him for safety purposes.  (Aranas Decl., p. 5).  Mr. Walker refused to turn around.

The Officers ordered Mr. Walker to get on the ground but he refused.  Officer Aranas walked forward approximately two steps into the home and tried to grab Mr. Walker's left hand to initiate a control hold.  Mr. Walker pulled away.  Officer Aranas then pulled Mr. Walker to the ground.  Once on the ground, Mr. Walker put both arms under his body toward the middle of his chest.  Both Sgt. Alvarez and Officer Aranas tried to gain control of Mr. Walker's arms and ordered Mr. Walker to quit resisting.  Mr. Walker refused and continued to struggle.  During the struggle, Officer Leibee kept her taser drawn.[6]

**Application of the Carotid Neck Restraint**

Sgt. Alvarez then performed the carotid neck restraint on Mr. Walker, because he believed the maneuver was "the safest way to bring Mr. Walker under control with the least amount of force in a fast escalating struggle that could have resulted in serious injury to the suspect or one of the officers." (Alvarez Decl., p. 3-4).  To apply the carotid neck restraint, Sgt. Alvarez yelled out "Carotid," (Leibee Decl., p. 5), but both arms around Mr. Walker's neck, and applied pressure for four to seven seconds until Mr. Walker became unconscious.  (Alvarez Decl., p. 4).  Once Mr. Walker became unconscious, Sgt. Alvarez released the hold and Officer Aranas handcuffed Mr. Walker.  Sgt. Alvarez requested Emergency Medical Services to respond for the application of the maneuver.  Mr. Walker regained consciousness within ten to twenty seconds.  When Mr. Walker regained consciousness, "he immediately began fighting against the handcuffs, yelling and screaming." (Leibee Decl., p. 5).  Officer Aranas and Sgt. Alvarez placed Mr. Walker on his side and monitored his airway, breathing, and circulation until the Emergency Medical Services arrived.  Once the emergency medical team arrived, Mr. Walker was transported to the Community Regional Medical Center for precautionary observation and treatment to ensure that he did not suffer any injuries from application of the maneuver.

**Witness Statements and Charges**

After Mr. Walker was detained and in handcuffs, Officers Dozier and Corona arrived at the scene and obtained witness statements from the neighbors.  (Dozier Decl., p. 1-2).  Mr. Walker was later charged with violations of California Penal Code § 148(a)(1), resisting, delaying, or obstructing an

---

[6] Although Officer Leibee did not personally apply physical force on Mr. Walker, she was still an "integral participant" in the incident and thus, potentially liable under section 1983.  *See Boyd v. Benton County*, 374 F.3d 773 (9th Cir. 2004) (recognizing that officers who provided armed backup during an unconstitutional search were "integral" to that search, and were therefore participants rather than mere bystanders for purposes of section 1983 liability).

1   officer,  and California Penal Code § 3056, legal custody; reimprisonment.[7]

2                         **Mr. Walker and Mr. Edwards' Relationship**

3        After the incident, Mr. Madrid learned that Mr. Walker was an old friend of Mr. Edwards.  Mr.

4   Edwards was letting Mr. Walker stay at his place for a few days to pay back a debt Mr. Edwards owed

5   Mr. Walker.  (Madrid Depo., p. 20).

6                                  **Procedural History**

7        On November 9, 2009, Mr. Walker filed his first amended  complaint ("FAC").  Pursuant to

8   section 1983, he asserted that Officers Dozier, Corona, Aranas, Leibee, and Sgt. Alvarez violated the

9   Fourth Amendment by: (1) committing an unlawful entry, (2) making an  unlawful arrest, and (3) using

10  excessive force.[8]  On February 26, 2010, defendants filed a motion to dismiss the FAC, pursuant to Fed.

11  R. Civ. 12(b)(6).  The motion was granted in part but denied with regard to Mr. Walker's unlawful entry,

12  unlawful arrest, and excessive force claims.  On October 21, 2010, defendants answered the complaint

13  and discovery commenced.

14       On September 30, 2011, defendants filed a motion for summary judgment, pursuant to Fed. R.

15  Civ. P. 56.  Mr. Walker  failed  to file  an opposition to defendants' motion or a statement of non-

16  opposition, pursuant to this Court's Local Rule 230(c).  The November 2, 2011 hearing or oral argument

17  was vacated, pursuant to Local Rule 230(g).  Having considered defendants' arguments and the relevant

18  law, this Court issues this order.

19                                    **DISCUSSION**

20  **I. Standards of Decision**

21              **A. Motion for Summary Judgment**

22       Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any

23  material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

24  _____

25      [7] California Penal Code § 3056 provides: "Prisoners on parole shall remain under the legal custody of the department
    and shall be subject at any time to be taken back within the inclosure of the prison."

26

27      [8] Mr. Walker also alleged a California state slander claim against Mr. Madrid and that certain officers knowingly
    prepared false police reports.  Mr. Walker filed his complaint while incarcerated so the slander claim was dismissed at the
    screening stage.  *See* 28 U.S.C. § 1915A(a).  The allegation that certain officers knowingly prepared false police reports was

28  dismissed pursuant to defendants Fed. R. Civ. P. 12(b)(6) motion.

*Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Soremekun v. Thrifty Payless*, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (moving party is able to prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case").

If "a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103.  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment."  *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Caterett*, 477 U.S. 317, 322 (1986).  Fed. R. Civ. P. 56(e)(2) requires a party opposing summary judgment to "set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted."  *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).

When a summary judgment motion is unopposed, a court must "determine whether summary judgment is appropriate – that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990).  A court "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but, rather must consider the merits of the motion."  *United States v. One Piece of Real Property, etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004).  A court "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials."  *Id.*

### B. Section 1983

"Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the

7

claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S. Ct. 2689, 2694, n. 3 (1979)). Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S. Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S. Ct. 984, 996 (1976)). Thus, in any section 1983 suit it must be determined "whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan,* 443 U.S. 137, 140, 99 S. Ct. 2689 (1979). Stated differently, in any section 1983 suit the claimant must identify the specific constitutional right allegedly infringed. *Albright*, 510 U.S. at 271, 114 S. Ct. at 811. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146, 99 S. Ct. 2689.

## II. Motion for Summary Judgment

Pursuant to section 1983 and the Fourth Amendment, Mr. Walker asserts (1) unlawful entry, (2) unlawful detention and arrest, and (3) use of excessive force claims against defendants. Defendants contend that they are entitled to summary judgment because their conduct did not violate Mr. Walker's Fourth Amendment rights as a matter of law.

### A. Claims Against Officers Dozier and Corona

Defendants argue that Officers Dozier and Corona are entitled to summary judgment for all claims against them because they arrived after Mr. Walker was arrested and assisted with interviewing witnesses. They contend that there is no evidence that Officers Dozier and Corona unlawfully entered the apartment, participated in an unlawful arrest, or used excessive force on Mr. Walker.

Liability under section 1983 "arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff must prove that each of the individual defendants personally participated in the alleged constitutional violations. *Jones v. Williams*, 297 F.3d 930, 934-35 (9th Cir. 2002). "A person deprives another 'of a constitutional right, within the

8

1   meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits

2   to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff

3   complains].'" *Leer*, 844 F.2d at 633 (citing *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

4          Officers Dozier and Corona are entitled to summary judgment for all claims against them because

5   they did not "personally participate[] in the alleged constitutional violations." *Jones*, 297 F.3d at 934-35.

6   Mr. Walker alleges that Officers Dozier and Corona entered the apartment at 11:47 p.m. without

7   consent, a warrant, or exigent circumstances.   However, Officer Dozier's undisputed declaration

8   provides that she and Officer Corona did not arrive at the apartment complex until 12:00 a.m. and then

9   obtained witness statements from the neighbors.  (Dozier Decl., p. 2).   Accordingly, the duo never

10  entered the apartment.  With regard to Mr. Walker's unlawful arrest claim, Officer Dozier's undisputed

11  declaration provides that neither she nor Officer Corona were involved with the arrest of Mr. Walker.

12  (Dozier Decl., p. 2).  She explains that by the time they arrived Mr. Walker was already detained and

13  in handcuffs.  (Dozier Decl., p. 2).  Thus, the two did not participate in the arrest.  Finally, Mr. Walker

14  alleges that Officers Dozier and Corona used excessive force on him during the arrest.  Officer Dozier's

15  undisputed declaration provides that neither she nor Officer Corona used any type of force against Mr.

16  Walker and arrived after he was detained and in handcuffs.  (Dozier Decl., p. 2).   Accordingly, neither

17  Officer Dozier nor Corona used excessive force on Mr. Walker.  Because the undisputed evidence shows

18  that Officers Dozier and Corona did not personally participate in the alleged constitutional violations,

19  this Court GRANTS Officer Dozier and Corona's request for summary judgment with regard to all

20  claims against them.

21              **B. Claims Against Sgt. Alvarez and Officers Aranas and Leibee**

22          Defendants argue that Sgt. Alvarez and Officers Aranas and Leibee are entitled to summary

23  judgment because Mr. Walker's Fourth Amendment claims fail as a matter of law.   First, defendants

24  argue that Mr. Walker lacks standing to assert an unlawful entry claim and, in the alternative, the

25  Officers acted lawfully when they entered the apartment.  Defendants also contend that Mr. Walker's

26  arrest was lawful because it was based on probable cause.  Finally, they contend that their use of force

27  was reasonable.  The Court considers each argument.

28                          **1. Unlawful Entry**

1    Sgt. Alvarez and Officers Aranas and Leibee contend that their entry into the apartment did not

2    violate Mr. Walker's Fourth Amendment rights because: (a) Mr. Walker did not have a legitimate

3    expectation of privacy in the residence and therefore, lacks standing to challenge the legality of the entry

4    and (b) the Officers' entry was justified by their reasonable belief that someone in the home was in need

5    of immediate aid.

6                                            **a. Standing**

7    Defendants contend that Mr. Walker lacks standing to assert a Fourth Amendment claim because

8    he did not have a legitimate expectation of privacy in the apartment.   They acknowledge that an

9    overnight guest has a legitimate expectation of privacy under the Fourth Amendment but argue that Mr.

10   Walker was not an overnight guest.

11   "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home

12   without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct.

13   1371 (1980). "[C]apacity to claim the protection of the Fourth Amendment depends . . . upon whether

14   the person who claims the protection of the Amendment has a legitimate expectation of privacy in the

15   invaded place." *Minnesota v. Olson*, 495 U.S. 91, 95 (1990) (internal quotation marks and citations

16   omitted).   "A subjective expectation of privacy is legitimate if it is one that society is prepared to

17   recognize as reasonable." *Id*. at 95-96 (internal quotation marks and citations omitted). "An overnight

18   guest in a home staying with the permission of the host has a reasonable expectation of privacy under

19   the Fourth Amendment." *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 533 (9th Cir.

20   2010) (citing *Olson*, 495 U.S. 91, 98-100, 110 S. Ct. 1684, 109 L.Ed.2d 85 (1990)).

21   The undisputed facts establish that Mr. Walker was an overnight guest at Mr. Edwards'

22   apartment and thus, had a legitimate expectation of privacy.  Mr. Walker's deposition provides that he

23   and Mr. Edwards were on their way to a party when Mr. Walker felt sick.  (Walker Depo., p. 31-32).

24   Mr. Edwards told Mr. Walker to go back to the apartment until Mr. Edwards returned.  (Walker Depo.,

25   p. 31).  Mr. Walker's deposition testimony is supported by Mr. Madrid's deposition testimony.  When

26   Mr. Madrid was asked how Mr. Walker gained entrance into Mr. Edwards' apartment, Mr. Madrid

27   explained:

28                I found out later on that this was an old friend of [Mr. Edwards].  And he had

                                                 10

1

2

> been in – he had just gotten out of prison and supposedly [Mr. Edwards], you know, he had, like, owed him something, so this was his way of paying him back letting him stay a few days there.

3

4

(Madrid Depo., p. 20).  Accordingly, the undisputed facts establish that Mr. Walker was an overnight

5

guest at Mr. Edwards' home staying with Mr. Edwards' permission.  Thus, Mr. Walker had a reasonable

6

expectation of privacy under the Fourth Amendment.  *See Espinosa*, 598 F.3d at 533.

7

Defendants argue that under *United States v. Davis*, 932 F.2d 752 (9th Cir. 1991), an individual

8

qualifies as an overnight guest when he exercises partial or joint control over the premises by paying

9

rent, has a key to the apartment, and stores possessions there.  *Id*. at 756-57.  They point out that Mr.

10

Walker did not pay rent or receive mail at the apartment, nor did he have a key.  They also point out that

11

the only possessions Mr. Walker had at Mr. Edwards' home were personal items that he always carried

12

with him.  Defendants reliance on *Davis* is misplaced.  In *Davis*, the Ninth Circuit held that the district

13

court correctly found that an individual had a sufficient connection to an invaded place to assert the

14

protection of the Fourth Amendment because he had a key to the apartment, was free to come and go,

15

stored things there, had independent access, and paid a portion of the rent.  *Id*. at 757.  The Ninth Circuit

16

did not hold that the articulated factors were necessary to qualify as an overnight guest who had "a

17

sufficient connection to the invaded place to assert the protection of the [F]ourth [A]mendment."  *Id*.

18

Accordingly, defendants' argument is unpersuasive.

19

Defendants also contend that under *United States v. Armenta*, 69 F.3d 304, 308 (9th Cir. 1995),

20

bald assertions that an individual is an overnight guest alone is insufficient to establish a legitimate

21

expectation of privacy.  This Court agrees but acknowledges that the evidence submitted in support of

22

this motion presents more than bald assertions that Mr. Walker was an overnight guest.  As discussed

23

above, both Mr. Walker and Mr. Madrid's deposition testimony establishes that Mr. Walker was in the

24

apartment with the permission of an identifiable host.  *See Armenta*, 69 F.3d at 308 (recognizing that

25

an overnight guest is "one who is in the owner's home with the permission of his host, and one who is

26

engaging in a longstanding social custom that serves functions recognized as valuable by society")

27

(internal quotation marks and citations omitted).  Accordingly, this Court is unpersuaded by defendants'

28

arguments.

11

1    Because Mr. Walker had a reasonable expectation of privacy in the apartment as an invited

2    overnight guest, he has standing to assert a Fourth Amendment unlawful entry claim. *See Olson*, 495

3    U.S. at 95 ("capacity to claim the protection of the Fourth Amendment depends . . . upon whether the

4    person who claims the protection . . . has a legitimate expectation of privacy in the invaded place")

5    (internal quotation marks and citations omitted); *Espinosa*, 598 F.3d at 533 ("An overnight guest . .

6    .staying with the permission of the host has a reasonable expectation of privacy under the Fourth

7    Amendment.") (internal citations omitted).

8                              **b. No Constitutional Violation**

9        Defendants contend that Sgt. Alvarez and Officers Aranas and Leibee did not violate Mr.

10   Walker's Fourth Amendment rights when they entered the apartment because they were faced with

11   exigent circumstances. "It is a 'basic principle of Fourth Amendment law' that searches and seizures

12   inside a home without a warrant are presumptively unreasonable." *Payton*, 445 U.S. at 586, 100 S. Ct.

13   1371 (1980). However, the Supreme Court does not "question the right of the police to respond to

14   emergency situations." *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S. Ct. 2408 (1978).

15       "Numerous state and federal cases have recognized that the Fourth Amendment does not bar

16   police officers from making warrantless entries and searches when they reasonably believe that a person

17   within is in need of immediate aid." *Id*. at 392. "[L]aw enforcement officers may enter a home without

18   a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent

19   injury." *Brigham City, Utah v. Stuart*, 547 U.S. 398 , 403, 126 S. Ct. 1943 (2006). Whether the entry

20   is constitutional "does not depend on the officers' subjective intent or seriousness of any crime they are

21   investigating when the emergency arises." *Michigan v. Fisher*, 130 S. Ct. 546, 548, 175 L.Ed. 410

22   (2009). Rather, "[i]t requires only an objectively reasonable basis for believing that a person within [the

23   house] is in need of immediate aid." *Id*. (internal quotation marks and citations omitted).

24       Here, the undisputed facts establish that the Officers had an objectively reasonable basis for

25   believing that Mr. Edwards was in the apartment and in need of immediate aid. Mr. Madrid told the

26   Officers that: (1) when he confronted Mr. Walker about his presence in the apartment complex, Mr.

27   Walker was acting strange and was not forthcoming on why he was at the apartment; (2) Mr. Walker

28   entered Mr. Edwards' apartment without knocking; (3) to Mr. Madrid's knowledge, no one should have

                                        12

been in the apartment but Mr. Edwards; (4) when Mr. Madrid called Mr. Edwards' apartment to confirm his safety, Mr. Edwards refused to allow him to speak to Mr. Edwards; and (5) Mr. Madrid was concerned for Mr. Edwards' safety. In addition, the Officers knew that Mr. Walker told Mr. Madrid that he was visiting Mr. Edwards, but then refused to allow Mr. Madrid to speak to him or see him. Further, when the Officers knocked on the apartment door and announced that they were from the Fresno Police Department, their knocks went unanswered. Therefore, the undisputed evidence establishes that the Officers belief that Mr. Edwards was in need of immediate aid was objectively reasonable given the facts available to the Officers at the time of the entry. *See e.g.*, *Martin v. City of Oceanside*, 360 F.3d 1078, 1082 (9th Cir. 2004) (holding that police had reasonable grounds to believe that there was an emergency at hand based on an emergency phone call from a father expressing concern for his daughter's welfare, unanswered knocks at the front door, a neighbor's statements that the occupants should be home, and presence of the occupants' cars suggesting that people were in the house)*; United States v. Brooks*, 367 F.3d 1128, 1135-36 (9th Cir. 2004) (holding that a 911 call alerting police to perceived domestic abuse, a hotel guest's statements that he feared an assault was occurring, and confirmation that a woman was in the hotel room justified officer's objectively reasonable belief that a woman might be injured and entry was necessary to prevent physical harm to her). Accordingly, Sgt. Alvarez and Officers Aranas and Leibee are entitled to judgment as a matter of law on Mr. Walker's Fourth Amendment unlawful entry claim.

### 2. Unlawful Arrest

With regard to Mr. Walker's unlawful arrest claim, Sgt. Alvarez and Officers Aranas and Leibee contend that they did not violate Mr. Walker's constitutional rights because the arrest was lawful. "The 'reasonableness' and hence constitutionality of a warrantless arrest is determined by the existence of probable cause." *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990). The "question of whether a reasonable officer could have believed probable cause (or reasonable suspicion) existed to justify . . . an arrest is 'an essentially legal question' that should be determined by the district court at the earliest possible point in the litigation." *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985)). "Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant

1    a prudent person to believe 'that the suspect has committed, is committing, or is about to commit an

2    offense.'" *Barry*, 902 F.2d at 773 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627,

3    2632 (1979)).

4         Here, the circumstances surrounding Mr. Walker's arrest establish that the Officers had probable

5    cause to make the arrest.  Mr. Walker was arrested for violating California Penal Code § 148(a)(1).  The

6    legal elements of this offense are as follows: "(1) the defendant willfully resisted delayed, or obstructed

7    a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the

8    defendant knew or reasonably should have known that the other person was a peace officer engaged in

9    the performance of his or her duties." *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (en

10   banc) (internal quotation marks and citations omitted).  First, the undisputed facts establish that Mr.

11   Walker delayed and obstructed a peace officer when he refused to answer the Officers' questions about

12   his presence in Mr. Edwards' apartment.  When the Officers asked to speak to Mr. Walker about his

13   presence he refused and was very confrontational.  He told the Officers that he was staying, *i.e.*, a guest,

14   in the apartment and kept walking in and out of the Officers' sight.  When the Officers told Mr. Walker

15   that if he was a guest, he needed to talk to them to confirm that fact, Mr. Walker refused.  In addition,

16   Mr. Walker refused to exit the apartment and told the Officers that they would have to come in and get

17   him.  Accordingly, Mr. Walker willfully delayed and obstructed the Officers.  Second, the undisputed

18   facts establish that the Officers were engaged in the performance of their duties.  The Officers were

19   uniformed, on-duty police officers responding to an emergency call regarding a suspicious person who

20   entered an apartment without knocking and the reporting party was concerned for the tenant's safety.

21   Mr. Walker  delayed and obstructed the Officers' ability to investigate the situation.  Finally, the

22   undisputed facts establish that Mr. Walker knew the defendants were peace officers engaged in the

23   performance of their duties: (1) Mr. Walker admitted to Officer Aranas that he knew they were police

24   officers;[9] (2)  the Officers announced several times that they were from the Fresno Police Department;

25   (3) the Officers were wearing Fresno Police  uniforms; (4) the Officers informed Mr. Walker that they

26   wanted to speak to him about his presence in the apartment; and (5) Mr. Madrid previously informed

27

28          [9] *See* Exhibit 1, page 5 attached to Mr. Walker's FAC.

14

1 Mr. Walker that he was going to call the police.  Thus, Mr. Walker knew the defendants were peace

2 officers engaged in the performance of their duties.  Because the undisputed facts establish that the

3 Officers had probable cause to make the arrest, Sgt. Alvarez and Officers Aranas and Leibee are entitled

4 to judgment as a matter of law on Mr. Walker's Fourth Amendment unlawful arrest claim.

5 **3. Excessive Force**

6 With regard to Mr. Walker's excessive force claim, Sgt. Alvarez and Officers Aranas and Leibee

7 contend that they did not violate Mr. Walker's constitutional rights because their use of force was

8 reasonable.  The initial inquiry in an excessive force claim, is "whether the officers' actions [were]

9 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*,

10 490 U.S. 386, 397, 109 S. Ct. 1865 (1989).  Whether a particular use of force was "objectively

11 reasonable" depends on several facts, including the severity of the crime that prompted the use of force,

12 the threat posed by a suspect to the police or to others, and whether the suspect was resisting arrest.  *Id*.

13 at 396-97.

14 "[T]he appropriate inquiry is whether the officers acted reasonably, not whether they had less

15 intrusive alternatives available to them." *Scott v. Henrich*, 39 F.3d 913, 915 (9th Cir. 1994), *cert.*

16 *denied*, 515 U.S. 1159, 115 S. Ct. 2612 (1995).  "An officer cannot be expected to accurately anticipate

17 all of the possible responses a subject may have to his commands and then tailor his actions accordingly

18 in order for his conduct to fall into the category of what is considered reasonable." *Reynolds v. County*

19 *of San Diego*, 84 F.3d 1162, 1169 (9th Cir. 1996), *overruled on other grounds, Acri v. Varian Assocs.,*

20 *Inc.*, 114 F.3d 999 (9th Cir. 1997).  "However, a simple statement by an officer that he fears for his

21 safety or the safety of others is not enough; there must be objective factors to justify such a concern."

22 *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001), *cert. denied*, 536 U.S. 958, 122 S. Ct. 2660

23 (2002).

24 Mr. Walker alleges that Sgt. Alvarez and Officers Aranas and Leibee used excessive force on

25 him when they grabbed him by the head, slammed him head first on the ground, and jumped on his back

26 after he informed them that he had pre-existing neck and back injury. (FAC, p. 3).  The undisputed facts

27 establish that Officer Aranas struggled with Mr. Walker and pulled him to the ground and that Sgt.

28 Alvarez applied the carotid neck restraint on Mr. Walker causing him to lose consciousness.  During the

15

1  tussle Officer Leibee had her taser drawn and ready.

2          Sgt. Alvarez's declaration provides that he applied the carotid neck restraint based on the

3  following factors: (1) Mr. Walker was actively resisting arrest and fighting the Officers; (2) Mr. Walker

4  refused to surrender peacefully and speak with the Officers; (3) Mr. Walker had not been searched for

5  weapons; (4) Mr. Walker was struggling to get free and they were in a confined space; and (5) Sgt.

6  Alvarez felt that the Officers' options and ability to protect themselves were limited by the confined

7  space. (Alvarez Decl., p. 3). Sgt. Alvarez also considered the fact that Mr. Walker was within reach of

8  an open unsearched closet and living room, was very large,[10] and demonstrating great strength. (Alvarez

9  Decl., p. 3). In addition, Sgt. Alvarez considered the fact that due to the confined area, Officer Leibee

10 could not immediately deploy her taser without the possibility of its effects on Sgt. Alvarez and Officer

11 Aranas. (Alvarez Decl., p. 3). Mr. Edwards fails to dispute these facts.

12         Based on the undisputed facts and circumstances of this case, the use of the carotid neck restraint

13 was an objectively reasonable use of force. Although the severity of Mr. Walker's crime was minimal,

14 Mr. Walker posed a potential threat to the Officers. Mr. Walker was confrontational, had not been

15 searched for weapons, and was within close proximity to an unsearched bathroom and living room. In

16 addition, Mr. Walker and the Officers were in a confined space, they were in a hallway that was only

17 three feet wide. Moreover, Mr. Walker was resisting arrest. He refused to comply with the Officers'

18 commands, struggled with the Officers when they tried to handcuff him, and when the Officers pulled

19 him to the ground he continued to avoid being handcuffed by placing his hands under his chest. *See*

20 *Tatum v. City of San Francisco*, 441 F.3d 1090, 1096-97 (9th Cir. 2006) (en banc) (holding that use of

21 bar arm control hold to place arrestee in handcuffs was reasonable despite minimal criminal conduct

22 because the police officer was faced with a potentially violent suspect, behaving erratically and resisting

23 arrest); *Sanders v. City of Fresno*, 551 F.Supp.2d 1149, 1168-71 (E.D. Cal. 2008) (finding that officers

24 did not use excessive force when they tased an individual numerous times because the police were

25 confronted with a rapidly evolving situation involving a person who, although unarmed and irrational,

26 was suspected of "medium level crimes," was a potential threat to a bystander, and was resisting arrest).

27

28          [10] Mr. Walker is six feet tall and at the time of the incident weighed approximately 230-240 pounds.

16

1    Although Mr. Walker alleged that the Officers used force on him despite the fact that he

2 informed them that he had a pre-existing neck and back injury, this allegation does not defeat the motion

3 for summary judgment. This fact is not supported by the evidence. To successfully oppose a motion

4 for summary judgment, Mr. Walker must go "beyond the pleadings" to identify facts which show a

5 genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. He failed to do so here.

6    The undisputed evidence shows that Sgt. Alvarez and Officers Aranas and Leibee did not violate

7 Mr. Walker's Fourth Amendment rights. This Court GRANTS Sgt. Alvarez and Officers Aranas and

8 Leibee's request for summary judgment with regard to all claims against them.

9                    **C. Qualified Immunity**

10    Defendants also contend that they are entitled to qualified immunity with regard to all of Mr.

11 Walker's Fourth Amendment claims because the law at the time of the incident was not so clearly

12 established that it would be clear to a reasonable officer that his or her conduct was unlawful. *See*

13 *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 943 (9th Cir. 2004) (qualified immunity protects

14 section 1983 defendants "from liability for civil damages insofar as their conduct does not violate clearly

15 established statutory or constitutional rights of which a reasonable person would have known"),

16 *overruled on other grounds, Action Apt. Assoc., Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020

17 (9th Cir. 2007). Because this Court finds that defendants are entitled to summary judgment with regard

18 to all of Mr. Walker's Fourth Amendment claims, this Court declines to address defendants' arguments

19 regarding qualified immunity.

20                    **CONCLUSION AND ORDER**

21    For the reasons discussed above, this Court:

22    1.    GRANTS defendants' motion for summary judgment and

23    2.    DIRECTS the clerk to enter judgment in favor of defendants and against plaintiff to close

24          this action.

25    IT IS SO ORDERED.

26 **Dated:    November 14, 2011**              **/s/ Lawrence J. O'Neill**
                                          UNITED STATES DISTRICT JUDGE

27

28